FOR APPELLANT: Anthony Edward Rothert, Jessica Mary Steffan, 906 Olive Street, Suite 1130, St. Louis, Missouri 63101, Gillian R. Wilcox, 406 West 34th Street, Suite 420, Kansas City, Missouri 64111.
FOR RESPONDENT: Erin Kathleen McGowan, 1200 Market Street, City Hall, Room 314, St. Louis, Missouri 63103.
James M. Dowd, Chief Judge *72 This Sunshine Law case arose out of a March 18, 2013 citizen complaint Filed by Curtis Farber against the Metropolitan Police Department of the City of St. Louis (Police Department). Faber's complaint accused several police officers of criminal misconduct-specifically, that they assaulted and threatened to falsify evidence against him-during his arrest on July 9, 2011 for offenses he later pleaded guilty to and for which he received probation. The Internal Affairs Division of the Police Department (IAD) completed its internal investigation of Farber's complaint in September 2013 and notified him in February 2015 of the IAD's finding that his complaint was "not sustained," meaning it was neither proved nor disproved. The Police Department took no further action with respect to Farber's complaint.
On November 3, 2015, Farber made a formal Sunshine Law[1] request that the Police Department release to him an un-redacted copy of the IAD report relating to his complaint. At that time, Farber possessed copies only of his initial complaint and the employee misconduct report (EMR) relating to his allegations. The IAD report was not issued to Farber so he sent another request in March 2016, The Police Department denied Farber's request in April 2016 notifying him that the IAD report was a "closed" record. Farber then filed this lawsuit seeking the disclosure of all records from the IAD investigation. On June 10, 2016, the Police Department provided Farber with another copy of the EMR but did not provide him with any of the other records he requested.
The case proceeded to a bench trial in February 2017. Though the court entered its original judgment in April 2017, the court's July 19, 2017 amended judgment is the subject of this appeal. The court found that pursuant to sections 610.021(3) and (13) the following records from the IAD investigation were properly closed because they were either personnel records or were prepared exclusively for the purpose of determining whether to internally discipline the police officers named in Farber's complaint: (1) correspondence directed to Farber notifying him of the results of the IAD investigation; (2) the administrative reports transmittal sheet ("ARTS report") documenting the investigation; (3) an inventory list; (4) an investigative information sheet; (5) inquiries to and statements from the accused officers; (6) inter-office memoranda regarding the IAD investigation; and (7) personal information of the victim of the offense with which Farber had been charged. As for the remaining records Farber requested but did not receive-which included photographs he submitted of his injuries, supplemental reports reflecting activity after Farber's arrest, including the presentation of charges to the Circuit Attorney, and several other arrest records-the court found that these were open and must be disclosed, and that the Police Department knowingly violated the Sunshine Law in refusing to disclose the records.
On appeal, Farber contends that the trial court erred because in his view none of the IAD investigation records should have been closed under the Sunshine Law. Specifically, he disputes the court's determination that the IAD's investigation into his complaint alleging criminal conduct *73 against the police officers did not generate an "investigative report" as defined by § 610.100.1(5), which is an open record under the Sunshine Law and must be disclosed. We disagree and affirm.
Standard of Review
This was a bench-tried declaratory judgment case. The standard of review in a declaratory judgment case is the same as in any other bench-tried case. State ex rel. Daly v. Info. Tech. Servs. Agency , 417 S.W.3d 804, 807 (Mo.App.E.D. 2013) (citing Guyer v. City of Kirkwood, 38 S.W.3d 412, 413 (Mo.banc 2001) ). In such cases, we affirm the judgment unless it incorrectly declares or applies the law, is not supported by substantial evidence, or is against the weight of the evidence. Matter of A.L.R. , 511 S.W.3d 408, 411-12 (Mo.banc 2017) (citing Murphy v. Carron , 536 S.W.2d 30, 32 (Mo.banc 1976) ). The interpretation of a statute, however, is a question of law that we determine de novo. Id. at 412.
Discussion
The Sunshine Law establishes Missouri's public policy that meetings and records of public governmental bodies are open to the public unless otherwise provided by law. § 610.011.1. Chapter 610 embodies Missouri's commitment to open government and is to be construed liberally in favor of open government. State ex rel. Mo. Local Gov't Ret. Sys. v. Bill , 935 S.W.2d 659, 664 (Mo.App.W.D. 1996).
A "public record" is "any record, whether written or electronically stored, retained by or of any public governmental body," § 610.010(6). Public records are presumed open to public inspection. § 610.011.2; N. Kansas City Hosp. Bd. of Trustees v. St. Luke's Northland Hosp. , 984 S.W.2d 113, 119 (Mo.App.W.D. 1998). This presumption of openness is subject to permissive exemptions listed in § 610.021. Chasnoff v. Mokwa, 466 S.W.3d 571, 577 (Mo.App.E.D. 2015). Section 610.021 is permissive in that it describes records that may be closed. Id. (citing Guyer , 38 S.W.3d at 414 ).
Subsection 3 of § 610.021 authorizes closing records relating to the "[h]iring, firing, disciplining or promoting of particular employees by a public governmental body when personal information"-that "relating to the performance or merit of individual employees"-"is discussed or recorded." And subsection 13 authorizes the closure of "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment...."
However, where a record fits equally under a permissive exemption and a provision requiring disclosure, the record should be disclosed. Laut v. City of Arnold, 417 S.W.3d 315, 323 (Mo.App.E.D. 2013) (citing Guyer , 38 S.W.3d at 414 ). And when a governmental body claims that an exception to the general rule of openness applies, the burden of persuasion in a suit seeking disclosure of public records shifts to the governmental body. § 610.027.2.
Here, the trial court found that under sections 610.021(3) and (13) the Police Department could close certain records Farber requested. Farber argues that the Police Department failed to carry its burden to show that it is permitted to close any of the records found by the trial court to be subject to permissive closure because each of those records constitutes part of an investigative report under § 610.100.1 (5) and thus is an open record under § 610.100.2(2). We disagree because we find that the trial court correctly determined that none of these records was part of an investigative report as defined by the statute, and that they were instead disciplinary or personnel records permitted to be closed under §§ 610.021(3) and (13).
*74 Section 610.100.1(5) defines an investigative report as "a record, other than an arrest or incident report[2] , prepared by personnel of a law enforcement agency, inquiring into a crime or suspected crime, either in response to an incident report or in response to evidence developed by law enforcement officers in the course of their duties." Section 610.100.2(2) implicitly provides that once an investigation by a law enforcement agency becomes inactive[3] , any investigative report arising therefrom is an open record, subject to redaction under § 610.100.3[4] . Laut , 417 S.W.3d at 321-22 (citing Guyer, 38 S.W.3d at 414, 415 ).
In determining whether § 610.100.2(2) mandates disclosure of any records here, we find that the decisive question is whether any of the records Far be r requested is a record "inquiring into a crime or suspected crime" as set forth in § 610.100.1(5). Indeed, the key aspect of an investigative report is that it is directed to alleged criminal conduct. Id. at 321 (citing Guyer , 38 S.W.3d at 415 ). Consequently, if none of the records here is so directed-i.e., none of them inquires into a crime-but instead all of them were generated solely for other purposes, such as internal discipline, they do not form part of an investigative report.
Applying these principles, we first acknowledge that to determine whether any record inquires into a crime in the particular circumstance where, as here, the citizen complaint implicated a person in a crime and an IAD investigation ensued, we must presume "such alleged criminal conduct was the subject of the investigation, and the report generated by the investigation must be disclosed." Guyer, 38 S.W.3d at 415.
Nevertheless, this presumption may be rebutted by evidence showing that, in fact, none of the records from the IAD investigation inquires into a crime. See Laut, 417 S.W.3d at 326 (holding that where, "unlike Guyer, the record ... supports the existence of a factual dispute regarding the substance of the Internal Affairs report, the Guyer presumption does not operate to mandate disclosure as a matter of law").
Based on our view of the record, we find that the trial court properly concluded that the Guyer presumption was overcome here-that the records at issue do not actually inquire into a crime. Lieutenant Adam Koeln, the Commander of the IAD, described the process of conducting an IAD investigation into officer misconduct, and specifically regarding the investigation into Farber's complaint. Lt. Koeln explained that when a citizen complaint is submitted or referred to the IAD, the complaint is first assigned to a preliminary investigator. That investigator contacts the complainant, conducts a preliminary *75 interview, and inquires into the details of the complaint. As part of this preliminary investigation, the investigator determines whether any further inquiry is justified into whether a crime was committed.
If the preliminary investigator determines there is enough evidence to justify further inquiry regarding whether a crime occurred, the preliminary investigation ends and the subsequent formal investigation into the citizen complaint proceeds down two tracks: (1) the preliminary investigator is assigned the criminal portion of the investigation, and (2) a second IAD investigator is assigned to the internal discipline portion. The two investigators may share information up to the point that the internal investigator interviews the officers involved or any Police Department employee, but no further, because at that point Garrity rights[5] come into play. From the moment those interviews begin, the investigations are separated. The criminal investigation results in the generation of an I/Leads report, and the disciplinary investigation generates an ARTS report.
If, however, the preliminary investigation does not uncover evidence justifying further criminal inquiry, the IAD prepares for the complainant's signature an "allegation of employee misconduct report" (EMR) the signing of which initiates a formal investigation directed solely to internal discipline.[6] This disciplinary investigation proceeds with interviews and results in the generation of an ARTS report.
Turning to the facts here, the Police Department followed the procedures outlined above and assigned the preliminary investigation into Father's complaint to Sergeant Kyle West. The documents actually generated by the Police Department during this stage of the investigation consisted solely of the EMR, a notification of the receipt of Farber's complaint, and memorializations or recordings of Farber's statement, all of which were either disclosed by the Police Department voluntarily or were ordered disclosed by the trial court and are not the subject of this appeal. As a result of his preliminary investigation, Sgt. West determined that the conduct alleged did not justify any further investigation into whether a crime had been committed. Thus, pursuant to the Police Department's procedures, the matter was referred for a formal investigation into the officers from a disciplinary standpoint.
As for the formal investigation, Lt. Koeln testified that it was focused on whether the four officers and sergeant who arrested Farber violated Rules 3, 7, or 9 of the Police Department manual, which sanction, respectively, the failure to take necessary supervisory action, conduct unbecoming of an officer, and physical abuse of another person. He testified that this inquiry did not involve the contemplation of any criminal charges-that by the time Farber signed the EMR, "it had already been determined that it was going to be an internal investigation only." And in accord with Lt. Koeln's account of the standard *76 procedure for an exclusively internal investigation, the findings of the investigation into Farber's complaint were documented in an ARTS report, which on this record we find does not constitute an investigative report under § 610.100.1(5).
In light of Lt. Koeln's testimony, we find that any records generated after Farber signed the EMR and the formal investigation began do not inquire into a crime or suspected crime and thus do not constitute part of an investigative report. Therefore, because all of the records at issue here were generated after Farber signed the EMR,[7] we hold that the trial court correctly found that none of them forms part of an investigative report, and that all of them may be closed by the Police Department under sections 610.021(3) and (13) as records generated exclusively for disciplinary purposes or as personnel records.
Conclusion
For the reasons stated above, we affirm the judgment of the trial court.
Lawrence E. Mooney, J., and Anthony R. Gabbert, Sp. J., concur.

See Chapter 610, RSMo 2016 (setting forth Missouri's Sunshine Law). All statutory citations in this opinion are to RSMo 2016 unless otherwise indicated.

An incident report is "a record of a law enforcement agency consisting of the date, time, specific location, name of the victim and immediate facts and circumstances surrounding the initial report of a crime or incident, including any logs of reported crimes, accidents and complaints maintained by that agency." § 610.100.1(4). An incident report is an open record. § 610.100.2.

There is no dispute here that the IAD investigation became inactive prior to the filing of Farber's Sunshine Law request.

Section 610.100.3 provides in pertinent part that open records retained by law enforcement may be redacted to the extent they contain "information that is reasonably likely to pose a clear and present danger to the safety of any victim, witness, undercover officer, or other person; or jeopardize a criminal investigation ...; or which would disclose techniques, procedures or guidelines for law enforcement investigations or prosecutions...."

In Garrity v. New Jersey , 385 U.S. 493, 499-500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the United States Supreme Court held that states are forbidden by the Fourteenth Amendment to use the threat of discharge to secure incriminating testimony against an employee, and that such coerced testimony-commonly referred to as a "Garrity statement"-cannot be used in criminal proceedings.

If at some point during this internal investigation additional evidence surfaces calling for a criminal investigation, Lt. Koeln testified, "steps [are] taken to bring another investigator to assist with the investigation and split them internally versus criminally."

We do not decide whether, if any of these records had been generated before Farber signed the EMR-i.e., during the preliminary investigation Lt. Koeln described as the stage in every IAD investigation where it is determined whether there is sufficient evidence to support a criminal charge-such records should then have been found to be open because they were generated in connection with an inquiry into whether a crime or suspected crime had been committed.