SUPREME COURT OF MISSOURI
 en banc
ELAD GROSS, ) Opinion issued June 29, 2021
 )
 Appellant, )
 )
v. ) No. SC98619
 )
MICHAEL PARSON, et al., )
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
 The Honorable Patricia Joyce, Judge

 Elad Gross appeals the circuit court’s judgment on the pleadings in favor of

Governor Michael Parson and the custodian of records for the governor’s office, Michelle

Hallford (collectively, “the Governor’s Office”). The underlying lawsuit filed by

Mr. Gross involves two public records requests he made under the Sunshine Law, sections

610.010-.035. 1 Mr. Gross claims the circuit court erred in entering judgment on the

pleadings because the Governor’s Office violated the Sunshine Law when it: required

Mr. Gross to pre-pay an estimate of costs for his first request that included attorney-review

time; arbitrarily refused to waive the fees associated with his first request; failed to explain

its estimated delay in producing certain requested records; and impermissibly redacted

1
 All statutory citations are to RSMo 2016 unless otherwise noted.
certain records. Mr. Gross claims some or all of these violations were knowing and

purposeful. He also alleges the circuit court misapplied the law by assigning him – not the

Governor’s office – the burden of demonstrating the redaction of portions of the records

complied with the Sunshine Law.

 For the reasons set forth below, the circuit court’s judgment is vacated, and the cause

is remanded.

 Factual and Procedural Background

 In 2018, Mr. Gross sent the Governor’s Office two requests for public records

pursuant to Missouri’s Sunshine Law. In August 2018, Mr. Gross first sought “[a]ny and

all records, communications, documents, emails, reports, and other material” sent from or

received by the Governor’s Office from 27 specific individuals or entities after January 9,

2017, i.e., between January 9, 2017, and the processing of Mr. Gross’s request. 2 Mr. Gross

says his request was made as part of his investigation into the use of “dark money” by

nonprofit organizations in Missouri. Mr. Gross ended his request by noting where

responsive documents should be sent and requesting a waiver of all fees related to his

request, stating:

 I request that the records responsive to my request be copied and sent
 to me at the following address: [Mr. Gross’s address]

 Where records are transmittable electronically, I request records
 responsive to my request be sent to [Mr. Gross’s email] or by CD-ROM at
 the address above.

2
 Eric Greitens was sworn in as the governor of Missouri on January 9, 2017. He resigned
on June 1, 2018. Then-Lieutenant Governor Michael Parson became governor for the
remainder of the term, pursuant to article IV, section 11(a) of the Missouri Constitution.
Governor Parson was then elected in November 2020 to a full term of office.

 2
 I request that all fees for locating and copying the records be waived.
 The information I obtain through this request will be used to determine
 whether specific organizations and individuals violated federal and Missouri
 laws governing political campaigns. This request is in the public interest due
 to its law enforcement purpose and because it will reveal whether specific
 nonprofit organizations are violating Missouri’s consumer protection laws
 and whether legislation is needed to provide transparency in government for
 the people of Missouri.

 Please let me know in advance of any search or copying if the fees
 will exceed $100.00.

 Christopher K. Limbaugh, then-general counsel for the governor, responded to

Mr. Gross’s first request on August 23, 2018, stating, “We are in the process of gathering

the records that are responsive to your request and anticipate that we will be able to provide

a response or cost estimate (if applicable) for the records you have requested in

approximately one month. We will contact you at that time.”

 On September 21, 2018, Mr. Limbaugh sent a follow-up response to Mr. Gross’s

first request, stating:

 We have found 13,659 documents that may be responsive to your request.
 The estimated cost for providing these records is $3618.40 (please see
 enclosed invoice). Before we begin preparing the information, please
 forward to this office a check in that amount, directed to the attention of
 Michelle Hallford, Custodian of Records, and made out to “State of Missouri
 — Governor’s Office[.]” Once we receive this amount we estimate that it
 will take at least 120 business days to complete this request. We will send
 the records to you on a disk.

The invoice attached to the follow-up communication provided Mr. Gross’s request would

take an estimated 90.46 hours of “research/processing” time at a rate of $40.00 per hour,

amounting to $3,618.40 in fees.

 3
 Upon receipt of this invoice, Mr. Gross sent Ms. Hallford and Mr. Limbaugh a letter,

asking the Governor’s Office to reconsider waiving the fees related to his request, stating

his request served a public, rather than a commercial, interest. Mr. Gross also requested

that the Governor’s Office provide a further explanation of the fees charged in the event it

declined to waive fees. He informed the Governor’s Office of section 610.026 and the

requirement that a public governmental body produce copies using the employees that

result in the lowest amount of charges and that charges for clerical work cannot exceed the

average hourly rate of pay for clerical staff. Additionally, Mr. Gross informed the

Governor’s Office section 610.023.3 requires that, when a public governmental body fails

to grant access to public records immediately, it must give a detailed explanation of the

cause for further delay and the place and earliest time and date the records will be available.

 On September 24, 2018, Mr. Gross sent a second Sunshine Law request to the

Governor’s Office, seeking:

 Any and all records, communications, documents, emails, reports, and other
 material sent by or to Office of the Governor’s staff, advisors, contractors, or
 other agents involving the Office of the Governor’s response or plans to
 respond to the Sunshine Requests sent to the Office of the Governor by Elad
 Gross dated August 18, 2018.

Mr. Gross again asked the Governor’s Office to waive fees related to his request,

articulating the same reasons he set forth in his first request. On September 27, 2018,

Mr. Limbaugh responded the Governor’s Office would provide a response or a cost

estimate within 10 days, adding, “We do not anticipate this will be a voluminous request.”

 On October 12, 2018, the Governor’s Office provided records in response to

Mr. Gross’s second request. The responsive records were separated into two sets. “Set A”

 4
contained 17 pages, two of which were partially redacted. “Set B” contained 40 pages,

none of which were redacted. In addition to the responsive documents, the Governor’s

Office informed Mr. Gross it decided to waive the fees for his second request. The

Governor’s Office did not, however, provide a further response regarding Mr. Gross’s first

request.

 Rather than tender the estimated fees associated with his first request, Mr. Gross

filed a petition in the circuit court on October 17, 2018. In his petition, Mr. Gross alleged

the following with respect to his first request: the Governor’s Office ignored his request

for fee waiver, $40 per hour is an excessive charge under section 610.023.3, the Governor’s

Office failed to provide a detailed explanation of the cause for delay in producing the

records, and the Governor’s Office also failed to provide the earliest time and date the

requested records would be available, as required by section 610.023.3 (Count I); the

Governor’s Office knowingly violated the Sunshine Law (Count II); the Governor’s Office

purposely violated the Sunshine Law (Count III); and the violations warranted injunctive

relief (Count IV). With respect to his second sunshine request, Mr. Gross alleged the

Governor’s Office improperly redacted certain records (Count V); the Governor’s Office

knowingly violated the Sunshine Law (Count VI); the Governor’s Office purposely

violated the Sunshine Law (Count VII); and the violations warranted injunctive relief

(Count VII).

 After filing its answer, the Governor’s Office filed a motion for judgment on the

pleadings, alleging Mr. Gross’s claims fail, as a matter of law. In particular, the Governor’s

Office alleged Mr. Gross’s fee-waiver claim fails because the Governor’s Office has

 5
discretion to waive fees; Mr. Gross’s excessive-fee claim fails because attorney review

time is chargeable to a requester and $40 per hour is the hourly rate of the lowest-paid

attorney who works for the Governor’s Office; Mr. Gross’s claim regarding the inadequate

timeline provided by the Governor’s Office fails because the 120-day estimate is

reasonable given the scope of Mr. Gross’s request; no improper redaction occurred because

the Sunshine Law “authorizes the redaction of closed information, which includes attorney-

client privileged communications”; and Mr. Gross’s allegations regarding “knowing” or

“purposeful” violations of the Sunshine Law are based only on speculation. On July 8,

2019, the circuit court sustained the motion for judgment on the pleadings and entered

judgment in favor of the Governor’s Office.

 Mr. Gross appealed, and this Court granted transfer after an opinion by the court of

appeals. Mo. Const. art. V, sec. 10.

 Standard of Review

 This Court reviews the circuit court’s grant of judgment on the pleadings de novo.

Woods v. Mo. Dep’t of Corr., 595 S.W.3d 504, 505 (Mo. banc 2020). In reviewing the

circuit court’s ruling, the Court must decide “whether the moving party is entitled to

judgment as a matter of law on the face of the pleadings.” Emerson Elec. Co. v. Marsh &

McLennan Cos., 362 S.W.3d 7, 12 (Mo. banc 2012) (quoting Eaton v. Mallinckrodt, Inc.,

224 S.W.3d 596, 599 (Mo. banc 2007)). “The well-pleaded facts of the non-moving party’s

pleading are treated as admitted for purposes of the motion.” Id. However, “[t]his Court

will not ‘blindly accept the legal conclusions drawn by the pleaders from the facts.’”

Ocello v. Koster, 354 S.W.3d 187, 197 (Mo. banc 2011) (quoting Westcott v. City of

 6
Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)). This Court will affirm the judgment if it is

supported by any theory, “regardless of whether the reasons advanced by the [circuit] court

are wrong or not sufficient.” Rouner v. Wise, 446 S.W.3d 242, 249 (Mo. banc 2014).

 Analysis

 On appeal, Mr. Gross claims the circuit court erred in sustaining the Governor’s

Office’s motion for judgment on the pleadings. In 10 points relied on, Mr. Gross offers 10

different legal reasons to support his position. First, he claims the Governor’s Office

violated the Sunshine Law when it required him to pre-pay an estimate of costs for his first

request that included attorney review time. Second, Mr. Gross alleges the Governor’s

Office violated the Sunshine Law when it failed to provide him with the earliest date upon

which the records in his first request would be available. Third, Mr. Gross alleges the

Governor’s Office violated the Sunshine Law when it failed to provide him with a detailed

explanation of why it required at least 120 business days to produce documents in response

to his first request. Fourth, Mr. Gross alleges he properly pleaded the Governor’s Office

violated the Sunshine Law when it redacted certain records in response to his second

request without explanation and without closing any records. Fifth, Mr. Gross alleges the

circuit court erred in holding he had the burden of demonstrating the Governor’s Office

did not comply with the Sunshine Law when, under the Sunshine Law, it is the Governor’s

Office’s burden to demonstrate compliance with the law when redacting public records. In

his sixth and seventh points, Mr. Gross alleges he adequately pleaded the Governor’s

Office knowingly violated the Sunshine Law with respect to his first and second requests,

respectively. In his eighth and ninth points, Mr. Gross alleges he adequately pleaded the

 7
Governor’s Office purposely violated the Sunshine Law with respect to his first and second

requests, respectively. Tenth, and lastly, Mr. Gross alleges the Governor’s Office abused

its discretion in violation of the Missouri and United States constitutions by acting

arbitrarily and capriciously in denying his request for a fee waiver or reduction associated

with his first request.

 Attorney Review Time

 In his first point, Mr. Gross alleges the circuit court erred in granting judgment on

the pleadings because the Governor’s Office violated the Sunshine Law when it required

him to pre-pay an estimate of costs for his first request that included attorney review time.

Mr. Gross avers the Sunshine Law does not authorize the Governor’s Office to charge him

for attorney review time.

 The parties do not dispute the facts relevant to Mr. Gross’s first point. The

Governor’s Office quoted Mr. Gross a total of $3,618.40, representing 90.46 hours of

“research/processing” time, charged at a rate of $40 per hour. The Governor’s Office

concedes the “research/processing” time listed in the invoice it sent Mr. Gross referred to

attorney review time, i.e., the time an attorney spends reviewing responsive documents for

the presence of privileged information and work product subject to redaction. The question

presented to this Court is whether section 610.026.1 authorizes a public governmental body

to charge attorney review time to a member of the public requesting copies of public

records.

 Mr. Gross claims section 610.026.1 does not authorize a public governmental body

to charge for attorney review time because it does not list attorney review time as one of

 8
the fees a public governmental body may charge. Additionally, he claims the public policy

of the Sunshine Law would be hindered if a public governmental body were authorized to

charge for attorney review time. In support of the circuit court’s judgment, the Governor’s

Office contends section 610.026.1 authorizes a public governmental body to charge a

requester for attorney review time because attorney review time is a subset of “research

time,” which section 610.026.1(1) authorizes. Alternatively, the Governor’s Office asserts

section 610.026.1(2) authorizes it to charge attorney review time as a subset of “staff time.”

 This is a question of statutory interpretation reviewed de novo. Wilson v. City of

Kan. City, 598 S.W.3d 888, 894 (Mo. banc 2020). “The primary goal of statutory

interpretation is to give effect to legislative intent, which is most clearly evidenced by the

plain text of the statute.” State ex rel. Goldsworthy v. Kanatzar, 543 S.W.3d 582, 585 (Mo.

banc 2018). Section 1.090 instructs the Court to take words and phrases “in their plain or

ordinary and usual sense.” Accordingly, “[a] word not defined in a statute is given its

ordinary meaning pursuant to the dictionary.” Bus. Aviation, LLC v. Dir. of Revenue, 579

S.W.3d 212, 218 (Mo. banc 2019).

 The context in which a word is used determines which of the word’s ordinary

meanings the legislature intended. State ex rel. Anheuser-Busch, LLC v. Moriarty, 589

S.W.3d 567, 570 (Mo. banc 2019). 3 So, to determine a statute’s plain and ordinary

3
 For an example of the importance of context, “[c]onsider this sentence: The batter flew
out. Without knowing context, one cannot determine whether that sentence describes what
happened when the cook tripped while a carrying a bowl of cake mix, or the final act of a
baseball game.” Keller v. Marion Cnty. Ambulance Dist., 820 S.W.2d 301, 302 (Mo. banc
1991).

 9
meaning, the Court looks to a word’s usage in the context of the entire statute, id., and

statutes in pari materia, R.M.A. ex rel. Appleberry v. Blue Springs R-IV Sch. Dist., 568

S.W.3d 420, 429 (Mo. banc 2019). 4

 The analysis, as with any question of statutory interpretation, starts with the text of

the statute in question, section 610.026.1, which provides:

 1. Except as otherwise provided by law, each public governmental
 body shall provide access to and, upon request, furnish copies of public
 records subject to the following:

 (1) Fees for copying public records, except those records restricted
 under section 32.091, shall not exceed ten cents per page for a paper copy
 not larger than nine by fourteen inches, with the hourly fee for duplicating
 time not to exceed the average hourly rate of pay for clerical staff of the
 public governmental body. Research time required for fulfilling records
 requests may be charged at the actual cost of research time. Based on the
 scope of the request, the public governmental body shall produce the copies
 using employees of the body that result in the lowest amount of charges for
 search, research, and duplication time. Prior to producing copies of the
 requested records, the person requesting the records may request the public
 governmental body to provide an estimate of the cost to the person requesting
 the records. Documents may be furnished without charge or at a reduced
 charge when the public governmental body determines that waiver or
 reduction of the fee is in the public interest because it is likely to contribute
 significantly to public understanding of the operations or activities of the
 public governmental body and is not primarily in the commercial interest of
 the requester;

 (2) Fees for providing access to public records maintained on
 computer facilities, recording tapes or disks, videotapes or films, pictures,
 maps, slides, graphics, illustrations or similar audio or visual items or
 devices, and for paper copies larger than nine by fourteen inches shall include

4
 Additionally, section 610.011.1 provides, “Sections 610.010 to 610.200 shall be liberally
construed and their exceptions strictly construed[.]” However, “[n]either an instruction to
employ ‘strict construction’ nor one to employ ‘liberal construction’ can authorize this
Court to add or subtract words from a statute or ignore the plain meaning of the words that
are there.” Dickemann v. Costco Wholesale Corp., 550 S.W.3d 65, 68 n.5 (Mo. banc 2018).

 10
 only the cost of copies, staff time, which shall not exceed the average hourly
 rate of pay for staff of the public governmental body required for making
 copies and programming, if necessary, and the cost of the disk, tape, or other
 medium used for the duplication. Fees for maps, blueprints, or plats that
 require special expertise to duplicate may include the actual rate of
 compensation for the trained personnel required to duplicate such maps,
 blueprints, or plats. If programming is required beyond the customary and
 usual level to comply with a request for records or information, the fees for
 compliance may include the actual costs of such programming.

Pursuant to this section, public governmental bodies must “provide access to and, upon

request, furnish copies of public records,” but the section also authorizes public

governmental bodies to charge a requester certain fees for providing access or furnishing

copies of public records. 5 The only authorized fees that might conceivably include attorney

review time are fees for “research time,” pursuant to section 610.026.1(1), and fees for

“staff time,” pursuant to section 610.026.1(2).

 The Governor’s Office claims that, because Mr. Gross’s public records request

required an attorney to conduct “a careful review and study of responsive documents . . . to

determine whether the documents contained privileged communications or work product

materials,” attorney review time qualifies as “research time.” 6 In fairness, among its

different meanings “research” can be used to mean a “careful or diligent search” or

“studious inquiry or examination.” Research, WEBSTER’S THIRD NEW INTERNATIONAL

5
 The Governor’s Office is a “public governmental body” as defined in section 610.010(4),
and records retained by the Governor’s Office constitute “public record[s]” as defined in
section 610.010(6). Whether the documents responsive to Mr. Gross’s request qualify as
“public records” under section 610.010(6) is not at issue in this case, so it will not be
addressed.
6
 It is telling that the Governor’s Office has difficulty describing attorney review time as
anything other than that – review time – in its brief.

 11
DICTIONARY UNABRIDGED 1930 (3d ed. 2002). Section 610.026.1(1), however, does not

authorize a public governmental body to charge a requester for any and all research time.

It authorizes a public governmental body to charge a requester for only a subset of research

time, research time “required for fulfilling public records requests.” Section 610.026.1(1).

So the issue is what “research time” is “required for fulfilling public records requests.”

 The Sunshine Law provides that, except as otherwise provided by law, all public

records “shall be open to the public for inspection and copying as set forth in sections

610.023 to 610.026.” Section 610.011.2. Moreover, “[p]ublic records shall be presumed

to be open unless otherwise exempt pursuant to the provisions of [chapter 610].” Section

610.022.5. The Sunshine Law then authorizes – but does not require – a public

governmental body to close public records (unless disclosure is otherwise required by law)

to the extent they relate to any one or more of 24 different subjects. See sections

610.021(1)-(24). As relevant to this appeal, section 610.021(1) authorizes a public

governmental body to close public records “to the extent they relate to . . . [l]egal actions,

causes of action or litigation involving a public governmental body and any confidential or

privileged communications between a public governmental body or its representatives and

its attorneys.” If a public governmental body “is in doubt about the legality of closing a

particular . . . record . . . [it] may bring suit” at its own expense “or seek a formal opinion

of the attorney general or an attorney for the governmental body.” Section 610.027.6.

 When a public record contains material that is not exempt from disclosure as well

as material that is exempt, “the public governmental body shall separate the exempt and

nonexempt material and make the nonexempt material available for examination and

 12
copying.” Section 610.024.1. Furthermore, “[w]hen designing a public record, a public

governmental body shall, to the extent practicable, facilitate a separation of exempt from

nonexempt information.” Section 610.024.2. This obligation to separate exempt and non-

exempt materials exists regardless of any particular request for public records.

 Because the Sunshine Law obligates a public governmental body to separate exempt

and non-exempt material without regard to any particular records request, attorney review

time to determine whether responsive documents contain privileged information is not

“[r]esearch time required for fulfilling records requests.” It is not a public records request

that requires the closing of records. A public records request may be fulfilled without any

attorney review time. Therefore, section 610.026.1(1) does not authorize a public

governmental body to charge attorney review time as research time required for fulfilling

records requests.

 The only other fee in section 610.026.1 that might include attorney review time is

section 610.026.1(2)’s provision for “staff time.” The Governor’s Office contends “staff

time” includes attorney review time because the attorneys reviewing responsive documents

are members of its staff. In isolation, the ordinary meaning of the word “staff,” –

“personnel responsible for the functioning of an institution or the establishment or the

carrying out of an assigned task under an overall director or head” – is broad enough to

include staff attorneys. Staff, WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY

UNABRIDGED 2219 (3d ed. 2002). However, the meaning of “staff time,” like any other

statutory term, must be determined within the context of the statute as a whole and its

cognate sections. Cosby v. Treasurer of State, 579 S.W.3d 202, 206 (Mo. banc 2019).

 13
 Section 610.026.1 provides a public governmental body “shall provide access to

and, upon request, furnish copies of public records[.] 7 Subdivision 2 then provides for

“[f]ees for providing access to public records maintained on computer facilities, recording

tapes or disks, videotapes or films, pictures, maps, slides, graphics, illustrations or similar

audio or visual items or devices and for paper copies larger than nine by fourteen inches.”

Section 610.026.1(2) (emphasis added). Such fees “shall include only the cost of copies,

staff time, which shall not exceed the average hourly rate of pay for staff of the public

governmental body required for making copies and programming, if necessary, and the

cost of the disk, tape, or other medium used for the duplication.” Id. (emphasis added).

In consequence, “staff time” is the time required to provide “access to public records

maintained on computer facilities, recording tapes or disks, videotapes or films, pictures,

7
 Indeed, the Sunshine Law repeatedly refers to public records being open to the public for
both inspection and copying. “[A]ll public records of public governmental bodies shall be
open to the public for inspection and copying.” Section 610.011.2 (emphasis added).
“[P]ublic records shall be open to the public for inspection and duplication.” Section
610.015 (emphasis added). “Each public governmental body shall make available for
inspection and copying by the public of that body’s public records.” Section 610.023.2
(emphasis added). “Each request for access shall be acted upon as soon as possible.”
Section 610.023.3. “If access to the public record is not granted immediately, the custodian
shall give a detailed explanation of the cause for further delay and the place and earliest
time and date that the record will be available for inspection.” Id. (emphasis added). “If
the separation [between exempt and non-exempt materials] is readily apparent to a person
requesting to inspect or receive copies of the form,” the public body must describe the
exempted material. Section 610.024.2 (emphasis added). Public governmental bodies
keepings records in electronic formats are “encouraged to provide access to its public
records to members of the public in an electronic format.” Section 610.029.1 (emphasis
added). Public bodies are also prohibited from entering “into a contract for the creation of
or maintenance of a public records database if that contract impairs the ability of the public
to inspect or copy the public records[.]” Id. (emphasis added).

 14
maps, slides, graphics, illustrations or similar audio or visual items,” which may include

programming, and to make “paper copies larger than nine by fourteen inches.”

 Attorney review time has no relation to providing “access to public records

maintained on computer facilities, recording tapes or disks, videotapes or films, pictures,

maps, slides, graphics, illustrations or similar audio or visual items” or making “paper

copies larger than nine by fourteen inches.” For that reason, section 610.026.1(2) does not

authorize the Governor’s Office to charge Mr. Gross for time its staff attorneys spend

reviewing responsive documents for privileged information.

 Because the Sunshine Law does not authorize a public governmental body to charge

a requester for attorney review time, the Governor’s Office was not entitled to judgment,

as a matter of law, from the face of the pleadings. In this respect, the circuit court erred in

sustaining the Governor’s Office’s motion for judgment on the pleadings.

 Earliest Date for Document Production

 In his second claim, Mr. Gross alleges the Governor’s Office violated the Sunshine

Law when it failed to provide him with the earliest date records in his first request would

be available for inspection. Section 610.023.3 provides, in relevant part:

 Each request for access to a public record shall be acted upon as soon as
 possible, but in no event later than the end of the third business day following
 the date the request is received by the custodian of records of a public
 governmental body. . . . If access to the public record is not granted
 immediately, the custodian shall give a detailed explanation of the cause for
 further delay and the place and earliest time and date that the record will be
 available for inspection. This period for document production may exceed
 three days for reasonable cause.

 15
(Emphasis added). Mr. Gross claims the Governor’s Office violated the plain language of

section 610.023.3 when it failed to provide an exact date upon which the requested records

would be available and, instead, provided only an estimate that production would take at

least 120 business days.

 Section 610.026.1(1) provides a requester “may request the public governmental

body to provide an estimate of the cost” before producing copies, and section 610.026.2

authorizes a public governmental body to request payment of “such copying fees” prior to

making copies. Pursuant to these provisions, Mr. Gross asked the Governor’s Office to let

him know in advance if the fees associated with his first request would exceed $100. The

Governor’s Office responded with its estimate that Mr. Gross’s request would require

90.46 hours of research and processing time billed at a rate of $40 per hour, totaling

$3,618.40. The Governor’s Office said that once it had received that amount, it estimated

Mr. Gross’s request would take 120 business days to complete.

 The Governor’s Office did not provide the “earliest time and date” the records

would be available for inspection because it conditioned its response on Mr. Gross’s

payment of attorney review time. While the Governor’s office was authorized by section

610.026.2 to require advance payment of statutorily authorized copying fees, the

Governor’s Office was not authorized to request payment of attorney review time prior to

making copies. Because the pleadings show the Governor’s Office provided Mr. Gross

with a time estimate of 120 business days from payment rather than the exact calendar date

upon which Mr. Gross could inspect the requested records, the Governor’s Office was not

entitled to judgment, as a matter of law, from the face of the pleadings. In this respect, the

 16
circuit court erred in sustaining the Governor’s Office’s motion for judgment on the

pleadings.

 Failure to Provide Detailed Explanation of 120-Business-Day Estimate

 In his third claim, Mr. Gross alleges the Governor’s Office violated section

610.023.3 when it advised Mr. Gross it would take at least 120 business days to produce

documents responsive to his first request without providing him with a detailed explanation

as to why it required at least 120 business days. As quoted above, section 610.023.3

provides, in relevant part:

 Each request for access to a public record shall be acted upon as soon as
 possible, but in no event later than the end of the third business day following
 the date the request is received by the custodian of records of a public
 governmental body. If access to the public record is not granted
 immediately, the custodian shall give a detailed explanation of the cause for
 further delay.

(Emphasis added). “The word ‘shall’ generally prescribes a mandatory duty.” State v.

Teer, 275 S.W.3d 258, 261 (Mo. banc 2009). 8

 In this Court, the Governor’s Office explains the 120-business-day estimate was

reasonable, as a matter of law, because Mr. Gross’s request was “voluminous and complex”

and the estimate of “120 business days to research and process [the] documents [was] based

on a review rate of 150 documents per hour at 10% of th[e] employee’s time.” This was

not apparent from the face of the pleadings, and, while it may have constituted a “detailed

8
 The presence of a penalty provision in the Sunshine Law for knowing and purposeful
violations confirms that the law imposes mandatory duties. See Teer, 275 S.W.3d at 262
(recognizing that the presence or absence of a penalty provision is a method for
determining whether a statute is mandatory).

 17
explanation” of the cause for delay, the Governor’s Office did not provide this explanation

to Mr. Gross.

 Because section 610.023.3 requires a public governmental body to provide a

“detailed explanation” when records are not immediately made available and the pleadings

do not show the Governor’s Office did so, the Governor’s Office was not entitled to

judgment, as a matter of law, from the face of the pleadings. With respect to Mr. Gross’s

claim that the Governor’s Office violated the Sunshine Law by failing to provide a detailed

explanation for the delay associated with his first request, the circuit court erred in

sustaining the Governor’s Office’s motion for judgment on the pleadings.

 Pleading Unexplained Redaction Sufficient to Allege Violation

 In his fourth claim, Mr. Gross alleges he properly pleaded the Governor’s Office

violated the Sunshine Law when it redacted certain records in his second request without

explanation. When a record contains both exempt and non-exempt material, the

governmental body must “separate the exempt and nonexempt material and make the

nonexempt material available for examination and copying.” Section 610.024.1. “If the

separation is readily apparent to a person requesting to inspect or receive copies of the

form, the public governmental body shall generally describe the material exempted unless

that description would reveal the contents of the exempt information and thus defeat the

purpose of the exemption.” Section 610.024.2 (emphasis added).

 In the records produced in response to Mr. Gross’s second sunshine request, the

redaction of material is readily apparent – a solid black box covers portions of two pages,

making those portions impossible to read. The Governor’s Office, however, provided

 18
Mr. Gross with no explanation as to why it redacted these portions of the responsive

records. It did not state the redacted material was privileged attorney-client information or

work product.

 In his petition, Mr. Gross alleged the Governor’s Office is subject to the Sunshine

Law and that he “requested public records subject to disclosure.” He also pleaded, “None

of [the Governor’s Office’s] responses to any of [Mr. Gross’s] Sunshine Requests indicated

that any records responsive to [his] requests were closed” and, further, “[d]espite not

closing any records, [the Governor’s Office] redacted portions of the records [it] produced

to [him].”

 Mr. Gross, therefore, pleaded the ultimate facts relevant to his claim: (1) the records

of the Governor’s Office, a public governmental body subject to the Sunshine Law, were

subject to disclosure; (2) the Governor’s Office did not allege the records were closed for

any reason; and (3) notwithstanding the fact the records were open, the Governor’s Office

redacted certain portions of those records. 9

 Nonetheless, the Governor’s Office, consistent with the circuit court’s ruling, says

“[t]he mere fact of redaction itself fails to state a violation of the Sunshine [L]aw because

redaction is authorized under the Sunshine law.” “What is more,” the Governor’s Office

says, “the second Sunshine [L]aw request clearly involved privileged and closed

9
 A “closed record” is defined as “any . . . record . . . closed to the public.” Section
610.010(1). When a public governmental body redacts a record, it closes the redacted
portion to the public. See State ex rel. Goodman v. St. Louis Bd. of Police Comm’rs, 181
S.W.3d 156, 160 (Mo. App. 2005) (concluding “the trial court did not err in authorizing
the Board to close by redaction [certain] information from the incident reports Goodman
requested” (emphasis added)).

 19
communications, since the requested documents involved multiple attorneys.” The

Governor’s Office is correct that the Sunshine Law authorizes redaction in certain

circumstances, such as for privileged attorney-client communication. But that general

authorization does not mean the redaction that took place in this case was proper. Indeed,

not every communication with an attorney is a privileged communication. “To be

privileged the communication must relate to attorney-client business and not to extraneous

matters.” State v. Fingers, 564 S.W.2d 579, 582 (Mo. App. 1978). The Governor’s Office

was not entitled to judgment on the pleadings simply because it noted the Sunshine Law

generally permits redaction of attorney-client privileged information. Whether redaction

was proper here is a fact question that cannot be resolved on a motion for judgment on the

pleadings.

 Mr. Gross’s pleading sufficiently alleged the Governor’s Office violated the law

when it redacted records responsive to his second request. In this respect, the circuit court

erred in sustaining the Governor’s Office’s motion for judgment on the pleadings.

 Burden of Persuasion Is Premature at Motion for Judgment on the Pleadings

 In his fifth claim, Mr. Gross alleges the circuit court misapplied the law when it

concluded he had the burden of demonstrating the Governor’s Office did not comply with

the Sunshine Law when it made the relevant redactions. He cites section 610.027.2, which

provides:

 Once a party seeking judicial enforcement of sections 610.010 to 610.026
 demonstrates to the court that the body in question is subject to the
 requirements of sections 610.010 to 610.026 and has held a closed meeting,
 record or vote, the burden of persuasion shall be on the body and its members

 20
 to demonstrate compliance with the requirements of sections 610.010 to
 610.026.

 Pursuant to section 610.027.2, “when a governmental body claims that an exception

to the general rule of openness applies, the burden of persuasion in a suit seeking disclosure

of public records shifts to the governmental body.” Farber v. Metro. Police Dep’t of City

of St. Louis, 558 S.W.3d 70, 73 (Mo. App. 2018). In other words, “[o]nce it is determined

that a governmental body is subject to the Sunshine Law and that it has claimed that a

record is closed, the burden is on the governmental body to demonstrate that the Sunshine

Law does not require disclosure.” Laut v. City of Arnold, 491 S.W.3d 191, 194 (Mo. banc

2016).

 Mr. Gross alleges the circuit court misapplied the law and assigned him the burden

of persuasion when it concluded that “[p]leading the fact of redaction, without more, does

not raise a plausible inference of violating the [S]unshine [L]aw, because multiple

provisions of the statute authorize redaction of documents.” This Court agrees. As

explained above, Mr. Gross sufficiently pleaded that the Governor’s Office redacted

records in violation of the law. In requiring Mr. Gross to plead “more,” the circuit court

effectively required him to prove the redaction was in violation of the law. However,

factual proof of a claim is not required on a motion for judgment on the pleadings.

Moreover, placing the burden on Mr. Gross is contrary to section 610.027.2, which requires

the public governmental body to demonstrate its compliance with the Sunshine Law once

a requester has demonstrated the governmental body is subject to the Sunshine Law and

 21
closed a record. Id. 10 A requester does not have the burden to show noncompliance when

an open record is redacted. The circuit court’s conclusion that Mr. Gross must have

pleaded “more” than unexplained redaction is erroneous.

 Knowing Violation Regarding First Request

 In his sixth claim, Mr. Gross alleges the Governor’s Office knowingly violated the

Sunshine Law with respect to his first records request and he sufficiently pleaded the

Governor’s Office committed knowing violations. The state of mind of a public

governmental entity that violates the Sunshine Law “is not a separate violation of the

[S]unshine [L]aw.” Roland v. St. Louis City Bd. of Election Comm’rs, 590 S.W.3d 315,

324 (Mo. banc 2019). Rather, “it simply determines the extent of [a] court’s discretion in

remedying an established [S]unshine [L]aw violation.” Id.

 “What constitutes a knowing . . . violation of the Sunshine Law is a question of

law.” Laut, 491 S.W.3d at 193. To prove a knowing violation of the Sunshine Law, a

party must do more than show that the governmental body knew the actions it was taking;

“it requires proof that the alleged violator knew that the conduct in question violated the

10
 Because judgment in this case was on a motion for judgment on the pleadings, the
argument made by the Governor’s Office that Mr. Gross should have “argued for a burden
shifting” or “requested in camera review of the two redactions in the circuit court” is not
meritorious. Mr. Gross alleged facts to support his claim that the Governor’s Office
violated the Sunshine Law in redacting open public records, and as the non-moving party,
his allegations “are treated as admitted for purposes of the motion for judgment on the
pleadings.” Woods, 595 S.W.3d at 505 (alterations omitted). And, even on remand when
the case proceeds beyond adjudication of the motion for judgment on the pleadings,
Mr. Gross does not need to request the burden be shifted because, by statute, he does not
have a burden of persuasion following a demonstration that the Governor’s Office is
subject to the Sunshine Law and closed a record or a portion of a record. Section 610.027.2.
For the same reason, Mr. Gross does not have an obligation to seek in camera review.

 22
Sunshine Law.” Id. at 200 (emphasis in original). “Whether the conduct of the [public

governmental body] brings it within the scope of the statutory definitions of knowing . . .

conduct is a question of fact.” Id. at 196. Intent is most often proved by circumstantial

evidence and “may be inferred from surrounding facts or the act itself.” Stone v. Mo. Dep’t

of Health, 350 S.W.3d 14, 24 (Mo. banc 2011) (quoting State v. Oliver, 293 S.W.3d 437,

446 (Mo. banc 2009)).

 In his petition, Mr. Gross alleged the Governor’s Office knowingly violated the

Sunshine Law with respect to his first records request because Mr. Gross informed the

Governor’s Office of the requirements of the Sunshine Law, it knew the requirements of

the Sunshine Law, and yet it “repeatedly refused to abide by the requirements of [the

Sunshine Law] with respect to [Mr. Gross’s] first Sunshine Request.” Mr. Gross

incorporated all of the factual allegations in his petition into his count alleging the

Governor’s Office acted knowingly. The reasonable inference that can be drawn from

these allegations and the incorporated facts related to Mr. Gross’s first records request is

that the Governor’s Office violated the law in the ways Mr. Gross alleged and knew it was

violating the law when it took the challenged actions (i.e., charged $40 per hour for

research/processing time, failed to provide the earliest date records would be available, and

failed to provide a detailed explanation of the cause for delay). Mr. Gross has sufficiently

alleged the Governor’s Office acted knowingly; therefore, the Governor’s Office was not

entitled to judgment, as a matter of law, from the face of the pleadings. In consequence,

the circuit court erred in sustaining the Governor’s Office’s motion for judgment on the

pleadings as to this issue.

 23
 Knowing Violation Regarding Second Request

 In his seventh claim, Mr. Gross alleges the Governor’s Office knowingly violated

the Sunshine Law with respect to his second sunshine request when it redacted two records

it provided to him. Mr. Gross also claims he sufficiently pleaded that a knowing violation

occurred. The Governor’s Office alleges its redactions were proper and Mr. Gross failed

to plead otherwise sufficiently. The circuit court held Mr. Gross did not plead any facts

“support[ing] even an inference that the Governor’s Office engaged in any conduct to

knowingly . . . violate the Sunshine Law.” This conclusion was erroneous.

 A plaintiff must plead ultimate facts in order to satisfy Missouri’s fact-pleading

standard. See Tuttle, 590 S.W.3d at 311 n.8. In his petition, Mr. Gross pleaded that the

Governor’s Office, without explanation and without closing records, redacted portions of

the records it produced to him in violation of the Sunshine Law, despite knowing the

requirements of the Sunshine Law and despite the fact the records were subject to

disclosure. The reasonable inference raised by these allegations is that the Governor’s

Office knew it could not redact records without explanation. Mr. Gross alleged it did so

anyway. These allegations are sufficient to plead a knowing violation of the Sunshine Law.

 Whether the Governor’s Office can meet its burden to demonstrate it did not violate

the Sunshine Law when it redacted records is not a matter that can be resolved at this stage.

As noted above, “[w]hether the conduct of the [public governmental body] brings it within

the scope of the statutory definitions of knowing . . . conduct is a question of fact” for the

factfinder. Laut, 491 S.W.3d at 196. The Governor’s Office was not entitled to judgment,

as a matter of law, from the face of the pleadings on Mr. Gross’s claim that the Governor’s

 24
Office knowingly violated the Sunshine Law with respect to his second sunshine request.

The circuit court erred in sustaining the Governor’s Office’s motion for judgment on the

pleadings in this regard.

 Purposeful Violation of the Sunshine Law

 In his eighth and ninth claims, Mr. Gross alleges the circuit court erred in sustaining

the Governor’s Office’s motion for judgment on the pleadings with respect to Counts III

and VII of his petition. Count III alleges the Governor’s Office purposely violated the

Sunshine Law with respect to his first request, and Count VII alleges the Governor’s Office

purposely violated the Sunshine Law with respect to his second request.

 Again, the state of mind of a governmental entity is not a separate count, but “simply

determines the extent of [a] court’s discretion in remedying an established [S]unshine

[L]aw violation.” Roland, 590 S.W.3d at 324. “What constitutes a . . . purposeful violation

of the Sunshine Law is a question of law.” Laut, 491 S.W.3d at 193. A public

governmental body purposely violates the Sunshine Law when it “exhibit[s] a ‘conscious

design, intent, or plan’ to violate the law and do[es] so ‘with awareness of the probable

consequences.’” Id. at 199 (quoting Spradlin v. City of Fulton, 982 S.W.2d 255, 262 (Mo.

banc 1998)).

 To plead a purposeful violation, Mr. Gross had to allege “ultimate facts—facts the

jury must find to return a verdict for the plaintiff.” Tuttle, 590 S.W.3d at 311 n.8 (internal

quotations omitted). With respect to his first records request, Mr. Gross alleges the

following violations: the Governor’s Office charged him for “research/processing” at a

rate of $40 per hour, but none of the Governor’s Office’s clerical staff is paid at that rate;

 25
the Governor’s Office failed to provide Mr. Gross with a detailed explanation of the cause

for delay in producing records; and the Governor’s Office failed to provide Mr. Gross with

the earliest date records would be available. Further, Mr. Gross alleges the Governor’s

Office “repeatedly refused to abide by the requirements” of the Sunshine Law in order to

“delay the release of information that may implicate the Office of the Missouri Governor

in a scheme to circumvent Missouri campaign finance laws” and “delay the release of

information that may implicate donors to Attorney General Josh Hawley’s campaign for

United States Senate in a scheme to circumvent Missouri campaign finance laws.”

 With respect to his second sunshine request, Mr. Gross alleges the Governor’s

Office violated the Sunshine Law when it redacted open public records. Further, he alleges

the Governor’s Office purposely violated the Sunshine Law when it redacted the records

“to avoid providing information pertinent to [Mr. Gross’s] investigation into government

corruption.” These allegations sufficiently allege the Governor’s Office had an intent to

violate the law. The Governor’s Office was not entitled to judgment, as a matter of law,

on the face of the pleadings; therefore, the circuit court erred in sustaining the Governor’s

Office’s motion for judgment on the pleadings in regard to Counts III and VII of

Mr. Gross’s petition.

 Constitutional Claim

 In his tenth and final claim, Mr. Gross alleges the Governor’s Office violated

“Missouri statutory and case law, the Missouri Constitution, and the United States

Constitution” and “abused its discretion by acting arbitrarily and capriciously in denying

[his] request for [the Governor’s Office] to waive or reduce fees associated with his first

 26
Sunshine Request.” While his point relied on mentions “Missouri statutory and case law,”

Mr. Gross’s argument alleges only constitutional violations. He claims the Governor’s

Office, by denying his request for fee waiver or reduction, acted arbitrarily and capriciously

in violation of the due process and equal protection clauses of the Missouri and United

States constitutions. However, Mr. Gross did not raise any constitutional issues in the

circuit court. “[T]o preserve constitutional questions for review on appeal, the

constitutional issue must be raised in the trial court at the earliest opportunity, consistent

with good pleading and orderly procedure.” Carpenter v. Countrywide Home Loans, Inc.,

250 S.W.3d 697, 701 (Mo. banc 2008). “This rule is necessary to prevent surprise to the

opposing party and to allow the trial court the opportunity to identify and rule on the issue.”

Id. Because Mr. Gross failed to raise this issue in the circuit court and never sought to

amend his pleadings, his constitutional claims have not been preserved for appellate

review.

 Conclusion

 The Governor’s Office was not entitled to judgment, as a matter of law, from the

face of the pleadings. Accordingly, the circuit court’s judgment is vacated, and the cause

is remanded.

 ___________________________________
 PATRICIA BRECKENRIDGE, JUDGE

Draper, C.J., Wilson, Russell,
Powell and Fischer, JJ., concur.
Ransom, J., not participating.

 27